## Poor *et al. versus* Colburn *et al.*

1. After a plea of "*nulla bona*" in an attachment-execution, the regularity of the process cannot be questioned. The plea is a waiver of irregularity in the process.

2. Application to set aside proceedings for irregularity should be made as early as possible.

3. A verdict in an attachment-execution found that the money in the hands of the garnishee belonged to the defendant, and that the plaintiff was entitled to $69, but did not find how much was in the hands of the garnishee. No judgment could be entered on it.

March 9th 1868. Before STRONG, READ, AGNEW and SHARS-WOOD, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the Mayor's Court of the *City of Carbondale*: No. 230, to January Term 1868.

This was an attachment-execution, issued May 12th 1866, by J. M. Poor & Mills against Thomas Kelly, in which Floyd Colburn, Joseph P. Colburn and Peter Summers were garnishees. On the 11th of May 1866, the plaintiffs obtained judgment in the Mayor's Court against Kelly on a transcript from the docket of an alderman, and issued an attachment-execution, &c. To the attachment-execution both the defendant and the garnishees pleaded "*Nulla bona.*" They objected on the trial to the regularity of the attachment, because no execution had been issued by the alderman. The court reserved this question, and by their direction the jury found a special verdict, "that the money in the hands of Peter Summers belonged to Thomas Kelly, and that Poor & Mills are entitled to $69.41."

The court (Hoyt, A. J.) afterwards delivered the following opinion on the reserved point:—

"Under the point reserved on the trial of this cause, the process of attachment-execution issued out of the Mayor's Court must be set aside. There never was an execution on the judgment by the magistrate whose transcript is on file here, and no certificate of *nulla bona* has been or could be filed. There is nothing therefore to sustain this attachment-execution, and it and all subsequent proceedings in this court are set aside."

The plaintiffs took a writ of error, and assigned for error, that the court erred:—

1. In allowing the defendants to question the regularity of the

[Poor *v.* Colburn.]

attachment-execution after pleading "*nulla bona*" and proceeding to trial.

2. In holding that the attachment-execution was irregular.

*W. W. Lathrop* (with whom was *D. C. Harrington*), for plaintiffs in error.—The only issue was whether the garnishees had in their hands effects belonging to Kelly: McCormac *v.* Hancock, 2 Barr 310; Flanagin *v.* Wetherill, 5 Wh. 286.

Pleading of "*nulla bona*" was a waiver of any objection to the jurisdiction of the court: Schenley *v.* Commonwealth, 12 Casey 29; Black *v.* Black, 10 Id. 354.

After going to trial on the merits, it was too late to question the regularity of the attachment-execution: Swanger *v.* Snyder, 14 Wright 218; Dunn *v.* Fries, 4 P. Leg. Jour. 473; Clarke *v.* McAnulty, 3 S. & R. 364; Potter *v.* McCoy, 2 Casey 458.

There was no argument for the defendants in error.

The opinion of the court was delivered, March 19th 1868, by

SHARSWOOD, J.—Upon the trial of the attachment-execution in this case in the court below, the only issue was upon the plea of *nulla bona*, in which both the defendant and the garnishees joined. The question on that issue was simply whether there was any debt due the defendant by the garnishees or deposit of money made by him or of goods or chattels pawned, pledged or demised, which was within the grasp of the process according to the Act of Assembly of June 16th 1836, § 35, Pamph. L. 767. Whether the process was regular or irregular was clearly aside from that issue, and could not be properly raised on the trial, any more than could the question whether a capias had been regularly issued against a freeholder on a plea to the declaration. The court, however, reserved the question, and under this reserved point set aside the process. Even, however, if the action of the court be considered as independent of what took place on the trial, it was entirely too late a stage of the cause to permit such an objection to the proceedings to prevail. It could not be pretended that the process was void and that the court had no jurisdiction: Swanger *v.* Snyder, 14 Wright 222. However it might have been if the garnishees had stood by themselves in court, the defendant appeared to the process and joined in the plea. There could not have been a stronger and more unequivocal waiver of all irregularity in the process: Zion Church *v.* St. Peter's Church, 5 W. & S. 215; Sherer *v.* The Easton Bank, 9 Casey, 134. It is a well-established rule of practice that application to set aside proceedings for irregularity should be made as early as possible, or, as it is commonly said, in the first instance. If the party take subsequent steps in the cause, he cannot afterwards revert to the irregu-

[Poor *v.* Colburn.]

larity and object to it : 1 Tidd's Pr. 513.   The defendant should have moved to quash the attachment at once on his appearance, but having pleaded, and subjected the plaintiffs to the delay, trouble and expense of preparing for trial, it was entirely too late for him to make the objection when the case came before the jury.

But the verdict was wrong, and no judgment could be entered upon it.   It found "that the money in the hands of Peter Summers (one of the garnishees) belonged to Thomas Kelly (the defendant), and that Poor & Mills (the plaintiffs) are entitled to $69.41."   It does not find how much was in the hands of Summers, and finds nothing as to the other garnishees.   Upon this issue, the verdict ought to have been for the plaintiffs, and that there was a certain sum belonging to the defendant in the hands of Summers, and in favor of the other garnishees : Act of June 13th 1836, § 58, Pamph. L. 582; Flanagin *v.* Wetherill, 5 Whart. 280.

Judgment reversed, and *venire facias de novo* awarded.